JUDGE NATHAN        **13 CIV 5029**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

HARRIS INTERACTIVE, INC.,

        Plaintiff,

        -against-

CHIRAG VYAS,

        Defendant.

Case No.

VERIFIED COMPLAINT

RECEIVED JUL 19 2013 S.D.C. S.D.N.Y. CASHIERS

--------------------------------------------------------------X

Plaintiff, Harris Interactive Inc. ("**Harris**" or "**Plaintiff**"), by its attorneys, Smith, Gambrell & Russell, LLP, states its Complaint against defendant, Chirag Vyas ("**Defendant**"), as follows:

### *Summary of Action*

1.    Harris, a market research firm headquartered in New York, brings this action for breach of contract and injunctive relief against defendant, Chirag Vyas, who served as a Senior Research Director, Custom Solutions Group at Harris until his resignation on April 12, 2013 to join The Futures Company, a rival company also located in New York ("**Futures Company**").

2.    The claims asserted in this action arise from Defendant's brazen disclosure of highly confidential trade secrets to another former employee, Aron Galonsky ("**Galonsky**"), who resigned from his employment at Harris within a few weeks of Defendant's departure to work for another Harris competitor, Interbrand Corporation.

3.    The confidential information consisted of an Excel spreadsheet of global survey data and high level analysis created and executed by Harris for one of its key clients (the

"**Client**") in connection with an extensive brand assessment tracking study (the "**Study**"). Equally disturbing, because the spreadsheet contained select survey results and compared the Client to its competitors in terms of various brand metrics, Defendant put in jeopardy the confidentiality of Harris's customer's proprietary data and Harris's analytical approach to data normalization. Because the Study also developed information about some of Harris's other key clients, Defendant's illicit disclosure jeopardized those relationships as well.

4. At the beginning of his employment with Harris, Defendant agreed in writing to be bound by Harris's written confidentiality policy. As required by Harris's internal requirements, on two later occasions during his employment Defendant again acknowledged his confidentiality obligations. Then Defendant signed a restrictive covenant agreement in 2012, which prohibits, among other things, his post-employment possession, use and disclosure of Harris's confidential information.

5. There can be no doubt that Defendant was well aware of his obligations to protect Harris's confidential information as well as the trade secrets and confidential information of Harris's customers. Further, the customer data involved in this action is indisputably protected under the confidentiality provisions Defendant agreed to during his employment with Harris. Defendant's possession and transmission of this data therefore constitutes a breach of Defendant's non-disclosure obligations to Harris, entitling Harris to relief.

6. Defendant's illicit disclosure of confidential trade secrets threatens to cause Harris irreparable injury. Defendant and Galonsky both work for Harris's competitors and the continued dissemination or use of the trade secrets by either of them will result in significant harm to, or loss of, Harris's customer relationships and business. In addition, Defendant's flagrant violation of his non-disclosure obligations causes Harris grave concern that Defendant

will also violate his obligations regarding the non-solicitation of Harris's customers, employees and vendors.

7. In order to prevent this irreparable injury, Harris needs enforcement of Defendant's restrictive covenants, including the non-disclosure covenant and the covenants against solicitation of customers, employees and vendors. Accordingly, in this action, Harris seeks, among other things, an order:

(a) directing Defendant to disclose to Harris any and all items (whether physical or electronic) obtained from Harris or from any other source in Defendant's possession, custody or control that contain, disclose, describe, embody or were derived, in whole or in part from, any confidential information as defined in paragraph 2 of the Confidentiality, Non-Competition and Non-Solicitation Agreement made on August 8, 2012 by and between Harris and Defendant ("**Restrictive Covenant Agreement**") ("**Confidential Information**");

(b) directing Defendant to turn over to Harris any and all items (whether physical or electronic) obtained from Harris or from any other source in Defendant's possession, custody or control that contain, disclose, describe, embody or were derived, in whole or in part from, any Confidential Information;

(c) directing Defendant to disclose to Harris any and all individuals to whom Defendant divulged any Confidential Information;

(d) directing Defendant to execute a sworn affidavit confirming that no additional Confidential Information remains in his possession, custody or control;

(e) restraining and enjoining Defendant from taking the following actions, alone or in concert with any other person or entity: (i) divulging, disclosing or communicating, directly or indirectly, any Confidential Information of Harris to any other person or entity; or (ii) using any Confidential Information of Harris for Defendant's benefit or the benefit of any other person or entity other than Harris for any purpose (including, without limitation, in the solicitation of customers or prospective customers);

(f) restraining and enjoining Defendant, until April 12, 2014, the one year anniversary of Defendant's termination date with Harris, from taking the following actions, alone or in concert with any other person or entity, directly or indirectly:

(i) canvassing, calling upon, soliciting, responding or providing services to any customer for whom Defendant had, at any time during his employment with Harris (a) provided services, (b) direct responsibility for, or (c) knowledge of or access to any Confidential Information concerning the services performed by Harris for such customers, for the purpose of enticing, persuading,

SGR/11245966.1

inducing or aiding such customer to retain or utilize the services of any other business which provides market research services, including, without limitation, survey data collection, survey data analysis, and brand, stakeholder and reputation consulting ("**Market Research Services**") or to withdraw, curtail, reduce or cancel any services being provided or pitched to such customer;

(ii) canvassing, calling upon, soliciting, responding or providing services to any prospective customer for which Defendant had, at any time during his employment with Harris, (a) direct responsibility for identifying or developing, or (b) knowledge of or access to any confidential information concerning, the services to be provided to, or other Confidential Information received from, such prospective customer, for the purpose of enticing, persuading, inducing or aiding such prospective customer to retain or utilize the services of any other business which provides Market Research Services or to persuade such prospective customer not to do business with Harris;

(iii) canvassing, calling upon, soliciting, responding or providing services to any vendor for the purpose of (i) enticing, persuading, inducing, or aiding such vendor to withdraw, curtail, reduce or cancel such vendor's business with Harris, or (b) engaging, or attempting to engage, in any activity which in any way interferes with Harris's relationship with such vendor; or

(iv) employing, or attempting to employ, any individual employed by Harris as of Defendant's termination date with Harris, on behalf of Defendant, or any person or entity that is, or is about to become, engaged in the business of providing Market Research Services, except for any employee whose employment was voluntarily terminated by Harris.

## *Parties*

8. Plaintiff, Harris Interactive Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 60 Corporate Woods, Rochester, New York.

9. Plaintiff maintains an office at 902 Broadway, New York, New York.

10. Harris is one of the world's leading market research firms and is known widely for the Harris Poll® and for pioneering innovative research methodologies. Harris provides

4

SGR/11245966.1

proprietary solutions in the areas of market and customer insight, corporate brand and reputation strategy, brand development, management and consulting, and marketing, advertising, public relations and communications research. Harris possesses expertise in a wide range of industries including health care, technology, public affairs, industry / trade associations, nonprofits, energy, telecommunications, financial services, insurance, media, retail, restaurant, and consumer package goods. Harris has offices in North America and Europe.

11. Defendant, Chirag Vyas, is an individual who is a citizen of the State of New Jersey, and who resides at 909 River Renaissance, East Rutherford, New Jersey.

### *Jurisdiction and Venue*

12. There is complete diversity of citizenship of the parties to this action.

13. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14. This Court has jurisdiction over this action, founded upon diversity of citizenship, pursuant to 28 U.S.C. §1332(a)(1).

15. This Court has personal jurisdiction over Defendant because Defendant regularly transacts business in this State, and/or, as detailed below, has committed tortious acts inside and outside of New York injuring Plaintiff within this State, and/or agreed to submit to the personal jurisdiction of this Court.

16. Venue is properly laid in this district pursuant to 28 U.S.C. §1391(a)(2), inasmuch as a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of property that is the subject of the action is situated in this district. Venue is properly laid in this district because the parties agreed to litigate the dispute in this court and agreed to submit to the venue of this court.

## Facts

**A.  Defendant's Employment with Harris and the Restrictive Covenants**

17.  Defendant was employed by Harris as an at-will employee during the period from on or about July 19, 2010 until April 12, 2013. During this period Defendant worked as a Senior Research Director.

18.  As a condition to his eligibility under Harris' fiscal year 2013 bonus plan, in or about August 2012, Defendant was required to sign the Restrictive Covenant Agreement. A copy of the Restrictive Covenant Agreement is annexed hereto as Exhibit "1."

19.  On or about August 8, 2012, Harris, by its Director of Human Resources, Belinda Cole, signed the Restrictive Covenant Agreement.

20.  On or about August 8, 2012, Defendant signed the Restrictive Covenant Agreement.

21.  Upon its execution by both parties, the Restrictive Covenant Agreement became a valid and binding agreement between Harris and Defendant.

22.  Pursuant to the Restrictive Covenant Agreement Defendant agreed "to hold all Confidential Information in the strictest of confidence" and "to comply with the requirements of all Customers concerning the use and disclosure by [Harris] of the confidential and proprietary information of such Customers." *See,* Exhibit 1, para. 3(b).

23.  "Confidential Information" is defined in the Restrictive Covenant Agreement as including, among other things, customer development plans or strategies, confidential and proprietary reports, investigations, research, methods, information prepared on behalf of any customer or prospective customer, and the results of research and development activities, processes, formulas and techniques ("**Confidential Information**"). *See,* Exhibit 1, para. 2(b).

SGR/11245966.1

24. Harris is one of only a few market research companies that have the technology sector expertise, unique brand equity knowledge, and competence to effectively interview global information technology decision makers for market research purposes. Also, there is a limited pool of potential customers who use the services of a market research firm such as Harris, all of which makes Harris's business highly competitive.

25. Because of the highly competitive nature of Harris's business, it takes elaborate measures to protect its Confidential Information. These measures include, without limitation, requiring all employees upon hiring to agree in writing to abide by confidentiality requirements, requiring regular acknowledgements of each employee's confidentiality obligations, requiring certain employees to sign the Restrictive Covenant Agreement, requiring regular acknowledgements of information technology protocols to ensure the protection of Confidential Information, and requiring departing employees to acknowledge their confidentiality obligations in writing as part of the separation process.

26. Among other things, the Restrictive Covenant Agreement requires Defendant, upon the termination of his employment with Harris, to promptly turn over to Harris "all records, computers or other electronic devices ... and any ... other items in [his] possession, custody or control, including without limitation all Customer and Prospective Customer lists and contact information and each of the items described in the definition of Confidential Information." *See,* Exhibit 1, para. 3(d).

27. Among other things, the Restrictive Covenant Agreement prohibits Defendant at any time during or after his employment, from disclosing or communicating Confidential Information to any person or entity other than certain Harris employees or using Confidential

Information for Defendant's benefit or any other person or entity other than Harris for any purpose. *See,* Exhibit 1, para. 3(b).

28. Defendant acknowledged in the Restrictive Covenant Agreement that Harris would suffer immediate and irreparable harm in the event of any actual or threatened breach of the restrictive covenants contained therein, and consented to Harris's specific enforcement of each of the covenants. *See,* Exhibit 1, para. 11.

B. **Defendant's Resignation from Harris and Acceptance of Employment with a Competitor.**

29. On April 1, 2013, Defendant provided notice that he resigned from Harris.

30. Defendant's last day of employment with Harris was April 12, 2013, at which time he signed an Employee Separation Form ("**Separation Form**").

31. In the Separation Form Defendant was reminded of his obligations set forth in the Restrictive Covenant Agreement.

32. By signing the Separation Form Defendant certified that he had received a copy of the Restrictive Covenant Agreement.

33. By signing the Separation Form Defendant certified that he did not have in his possession or had not failed to return any of Harris's property, including documents, data, customer lists, customer records, sales records, or copies of them, or other documents or materials.

34. Defendant's certification about his possession of Harris's property was false.

35. Upon information and belief, Defendant is currently employed by Futures Company, a subsidiary of WPP, a global leader in advertising and marketing services.

36. Futures Company is a research based consulting company offering a full range of consulting and subscription services. Futures Company competes with Harris in the areas of

strategic brand and market opportunity planning and tracking, including strategic brand positioning, impact of future trends, brand growth, brand differentiation and innovation, customer needs, brand messaging and brand optimization. Futures Company has approximately nine offices in six countries.

**C.  Defendant's Disclosure of Harris's Confidential Information In Violation of the Restrictive Covenant Agreement.**

37. On July 10, 2013, Defendant erroneously sent an e-mail to Aron Galonsky at Galonsky's former e-mail address, agalonsky@harrisinteractive.com.

38. Defendant sent the e-mail to Galonsky using Defendant's e-mail address of chiragyvyas@gmail.com.

39. Pursuant to Harris's regular business practice, when Galonsky left his employment at Harris his e-mail address was kept open and his e-mails were forwarded to the e-mail "Inbox" of his former supervisor, Carol Gstalder ("**Gstalder**"). Thus, Defendant's July 10, 2013 e-mail to Galonsky was re-routed to Gstalder's Harris e-mail "Inbox."

40. Upon information and belief, Defendant knew that Galonsky had left his employment at Harris and therefore intended to send the July 10th e-mail to Galonsky either at a personal or current work e-mail address rather than his former address at Harris. Instead, Defendant inadvertently sent the e-mail to Galonsky at his former address, and it was re-routed to Gstalder.

41. Defendant's e-mail to Galonsky attached an Excel file consisting of select data and analysis from the Study that Harris performed for its customer during the preceding fiscal year ("**Client File**"). A copy of the July 10, 2013 e-mail is annexed hereto as Exhibit "4," but the Client File is being filed under seal due to its status as a confidential trade secret.

42. The Client is an information technology company focused on data storage. The Client File included a portion of the questionnaire used to perform the Study. The Study was intended to help the Client understand various aspects of its brand equity relative to its competitors and improve market perceptions of the company. Select results of the Study were included in the file, and they consisted of a comparison of the Client with several of its closest competitors on various brand attributes. In addition, the Client File contained results of a confidential data normalization analysis (a process for efficiently organizing data) which is used in multi-attribute surveys and subsequent data models to better understand and increase the predictive power of global attitudes and preference for brands. The Client File also segmented brand attributes by those that are brand drivers, brand halo measures, brand needs and other attributes in predicting brand equity. This analysis is highly competitive, differentiating, and confidential, basically providing the blue print for brand improvement for the Client and each competitor included in the Study.

43. The Client File constitutes Confidential Information as defined by the Restrictive Covenant Agreement. The questionnaire for the Study included in the Client File consists of Harris's proprietary methodologies, processes, formulas and techniques. See, Restrictive Covenant Agreement, Exhibit 1, para. 2(b)(4). The file is also Confidential Information because it includes the "nature and results of [Harris's] research and development activities." Id.

**D.** ***As a Former Harris Employee Subject to Restrictive Covenants,***
   ***Aron Galonsky is not Permitted to Possess or Use Harris's Confidential Information.***

44. Aron Galonsky was employed by Harris during the period from February 22, 2010 until May 3, 2013.

45. Galonsky's period of employment largely coincided with Defendant's period of employment by Harris.

46. When Defendant was initially hired by Harris, Galonsky was his direct supervisor.

47. Galonsky served as a Senior Consultant for Brand Management at Harris until his resignation on May 3, 2013 to do a substantially similar job for Interbrand Corporation ("**Interbrand**").

48. Interbrand, a division of Omnicom, a global leader in advertising and marketing communications, is a global branding consultancy, specializing in brand strategy, brand analytics, brand valuation, corporate design, digital brand management, packaging design and naming. Interbrand has approximately 42 offices in 28 countries.

49. For over three years, Galonsky played a critically important and unique role at Harris, which gave him access to vital, sensitive business information about Harris's business methods and formulae as well as similar information about Harris's customers.

50. Galonsky performed several roles at Harris through which he had access to and learned of various types of Confidential Information of Harris.

51. Galonsky had signed a Confidentiality, Non-Competition and Non-Solicitation Agreement with Harris which was in effect at the time of the termination of his employment and which contained terms identical to those contained in Defendant's Restrictive Covenant Agreement ("**Galonsky Restrictive Covenant Agreement**").

52. Following the termination of Galonsky's employment, Harris and Galonsky engaged in prolonged and in-depth negotiations regarding the application of certain provisions in the Galonsky Restrictive Covenant Agreement.

SGR/11245966.1

53. The negotiations culminated in the execution of a Settlement Agreement made and entered into May 3, 2013 by and among Harris, on the one hand, and Galonsky and Interbrand, on the other ("**Settlement Agreement**").

54. With limited exceptions, Galonsky agreed in the Settlement Agreement to comply with all of the restrictions contained in the Galonsky Restrictive Covenant Agreement, including non-disclosure and non-use of Confidential Information and non-solicitation of specified customers.

55. The Client was one of the customers specified in the Settlement Agreement as being on the "Restricted Customer List" as to which Galonsky is prohibited from soliciting business until May 3, 2014, the one year anniversary following his termination of employment with Harris.

56. Galonsky is restricted from possessing or using Harris's Confidential Information and from soliciting the Client.

57. Galonsky and Defendant worked together closely at Harris for about three years.

58. Galonsky and Defendant left their employment at Harris at approximately the same time.

59. Galonsky and Defendant worked together at TNS NFO, another market research and consulting company, before they joined Harris.

60. Galonsky and Defendant both have profiles on the professional networking website LinkedIn, and are connected to one another on the LinkedIn website.

61. Galonsky has changed his profile on LinkedIn to reflect his new employment with Interbrand.

SGR/11245966.1

62. Upon information and belief, because Galonsky and Defendant are "connected" on LinkedIn, Defendant likely received an e-mail announcing Galonsky's new professional affiliation.

63. Upon information and belief, at the time he sent the Client File to Galonsky, Defendant knew that Galonsky was no longer employed by Harris and inadvertently sent the file to Galonsky at his former Harris e-mail address rather than Galonsky's personal or current work email address.

64. Upon information and belief, in his new position at Interbrand, Galonsky is performing the same brand measure design, development, sales and support functions as at Harris.

65. In his role as Senior Consultant for Brand Management at Harris, Galonsky was responsible to sell and deliver sales support for corporate and product brand development, and brand measurement and consulting solutions, resulting in his building deep, ongoing relationships with Harris's customers and prospects. As a Senior Consultant, Galonsky was also responsible for leading project design and delivery to clients in conjunction with research teams who he mentored, including the Defendant. Galonsky also assisted in helping to build Harris's reputation in the area of brand and advertising consulting.

66. Galonsky was the Senior Consultant on the Study Harris conducted on behalf of the Client; as such he had overseen the research and worked with the Client on design, analysis and reporting of the Study.

67. At the time of the termination of Defendant's and Galonsky's employment, Harris and Interbrand were bidding against each other for the Client's business. If Galonsky solicits the Client, his experience of working with the Client at Harris and his possession and use of

13

SGR/11245966.1

Confidential Information would undoubtedly give his new employer Interbrand a competitive edge for this business.

68. In addition, Defendant and Galonsky would both be able to use the results of the Study to solicit the other companies identified in the Study as having been compared with the Client.

69. Further, Defendant and Galonsky would both be able to use the Study questionnaire and Harris's proprietary methodological approach utilized in the Study to solicit work from companies beyond those identified in the Study to the extent they are interested in brand tracking research.

70. Because of Galonsky's restriction from possessing or using Harris's Confidential Information and trade secrets and from soliciting the Client, there was no legitimate reason for Defendant to send the Client File to Galonsky.

E.  **Defendant's Actions Are Causing Harris Irreparable Injury**

71. The loss of Harris's Confidential Information impacts the core of its organization. Harris cannot function without being able to maintain and protect the confidentiality of its own trade secrets from competitors as well as protect against the disclosure of the trade secrets of its customers. Money damages alone are inadequate to remedy Defendant's intentional and flagrant breach of Harris's confidentiality protocol.

72. Harris has strong business interests in preventing the disclosure of its Confidential Information and trade secrets to, and use of its Confidential Information and trade secrets by, unauthorized parties such as Defendant and Galonsky. If protection of these interests is not granted, Harris will suffer irreparable harm by the unauthorized disclosure and use of its Confidential Information and resulting loss of customers and potential customers.

SGR/11245966.1

73. Harris also has serious concerns that Defendant is violating or will violate the other terms in the Restrictive Covenant Agreement, including the client and employee non-solicitation restrictions.

74. As a matter of law, the foregoing misconduct and unauthorized use of the Confidential Information constitutes irreparable injury for which an injunction is the only possible remedy to prevent further loss of Harris's proprietary information, goodwill and business opportunities.

75. Absent such relief, Defendant will continue to use and disclose to third parties Harris's Confidential Information in violation of the Restrictive Covenant Agreement.

## COUNT I

### (*Injunctive Relief*)

76. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 as though set forth fully herein at length.

77. Defendant was contractually bound to abide by the non-disclosure covenants of the Restrictive Covenant Agreement.

78. Plaintiff has complied with all terms and conditions, and has complied with all obligations of the Restrictive Covenant Agreement.

79. Defendant is, at a minimum, currently breaching his non-disclosure covenants of the Restrictive Covenant Agreement by, among other things, retaining Harris's Confidential Information, disclosing Harris's Confidential Information to third parties, and failing to return the Confidential Information to Harris.

80. As a direct result of these breaches, Harris has suffered irreparable harm, and will continue to suffer irreparable harm unless Defendant is enjoined from future breaches of the non-

disclosure covenants of the Restrictive Covenant Agreement and the other terms in such agreement, including the client and employee non-solicitation restrictions.

81. By reason of the foregoing, Harris seeks an immediate preliminary injunction ordering Defendant to (a) cease and desist using or disclosing any of Harris's Confidential Information, including without limitation the Client File, (b) return immediately to Harris all of the Confidential Information in Defendant's possession, custody or control, and (c) comply with all other terms of the Restrictive Covenant Agreement, including the client and employee non-solicitation restrictions.

82. Plaintiff has no adequate remedy at law.

## COUNT II
### (*Breach of Contract*)

83. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 as though set forth fully herein at length.

84. Defendant was contractually bound to abide by the non-disclosure covenants of the Restrictive Covenant Agreement.

85. Defendant has breached his non-disclosure covenants of the Restrictive Covenant Agreement by, among other things, retaining Harris's Confidential Information, disclosing Harris's Confidential Information to third parties, and failing to return the Confidential Information to Harris.

86. Plaintiff has complied with all terms and conditions, and has complied with all obligations of the Restrictive Covenant Agreement.

87. As a direct result of Defendant's breach, Plaintiff has been damaged in an amount to be determined at trial, but which cannot be compensated by money alone.

SGR/11245966.1

**WHEREFORE,** plaintiff, Harris Interactive Inc., demands judgment against Defendant as follows:

(a) On the First Cause of Action, specifically enforcing Defendant's obligations under the terms of the Restrictive Covenant Agreement, and for injunctive relief against Defendant, as follows:

(i) directing Defendant to disclose to Harris any and all items (whether physical or electronic) obtained from Harris or from any other source in Defendant's possession, custody or control that contain, disclose, describe, embody or were derived, in whole or in part from, any confidential information as defined in paragraph 2 of the Restrictive Covenant Agreement;

(ii) directing Defendant to turn over to Harris any and all items (whether physical or electronic) obtained from Harris or from any other source in Defendant's possession, custody or control that contain, disclose, describe, embody or were derived, in whole or in part from, any Confidential Information;

(iii) directing Defendant to disclose to Harris any and all individuals to whom Defendant divulged any Confidential Information;

(iv) directing Defendant to execute a sworn affidavit confirming that no additional Confidential Information remains in his possession, custody or control;

(v) restraining and enjoining Defendant from taking the following actions, alone or in concert with any other person or entity: (i) divulging, disclosing or communicating, directly or indirectly, any Confidential Information of Harris to any other person or entity; or (ii) using any Confidential Information of Harris for Defendant's benefit or the benefit of any other person or entity other than Harris for any purpose (including, without limitation, in the solicitation of customers or prospective customers);

(vi) restraining and enjoining Defendant, until April 12, 2014, the one year anniversary of Defendant's termination date with Harris, from taking the following actions, alone or in concert with any other person or entity, directly or indirectly:

(a) canvassing, calling upon, soliciting, responding or providing services to any customer for whom Defendant had, at any time during his employment with Harris (a) provided services, (b) direct responsibility for, or (c) knowledge of or access to any Confidential Information concerning the services performed by Harris for such customers, for the purpose of enticing, persuading, inducing or aiding such customer to retain or utilize the services of any other business which provides Market Research Services or to withdraw, curtail, reduce or cancel any services being provided or pitched to such customer;

(b) canvassing, calling upon, soliciting, responding or providing services to any prospective customer for which Defendant had, at any time during

his employment with Harris, (a) direct responsibility for identifying or developing, or (b) knowledge of or access to any confidential information concerning, the services to be provided to, or other Confidential Information received from, such prospective customer, for the purpose of enticing, persuading, inducing or aiding such prospective customer to retain or utilize the services of any other business which provides Market Research Services or to persuade such prospective customer not to do business with Harris;

(c) canvassing, calling upon, soliciting, responding or providing services to any vendor for the purpose of (i) enticing, persuading, inducing, or aiding such vendor to withdraw, curtail, reduce or cancel such vendor's business with Harris, or (b) engaging, or attempting to engage, in any activity which in any way interferes with Harris's relationship with such vendor; or

(d) employing, or attempting to employ, any individual employed by Harris as of Defendant's termination date with Harris, on behalf of Defendant, or any person or entity that is, or is about to become, engaged in the business of providing Market Research Services, except for any employee whose employment was voluntarily terminated by Harris.

(b) On the Second Cause of Action, for damages in an amount to be determined at trial, but believed to be in a sum in excess of $75,000, exclusive of interest and costs;

(c) An award of prejudgment interest;

(d) An award of punitive damages;

(e) An award of costs, fees and disbursements; and

(f) For such other and further relief in law and equity as the Court may deem appropriate.

Dated: New York, New York
July 18, 2013

SMITH, GAMBRELL & RUSSELL, LLP

By: _____
Peter G. Goodman

250 Park Avenue, Suite 1900
New York, New York 10177
(212) 907-9700

*Attorneys for Plaintiff*
*Harris Interactive Inc.*

# VERIFICATION

MARC H. LEVIN, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I am a corporate officer of the plaintiff, Harris Interactive Inc. ("Harris"), in the within action.

2. I have read the foregoing Complaint and the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

3. The basis of the matters stated to be alleged on information and belief are investigation and the books and records of Harris.

4. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2013

_____
MARC H. LEVIN